THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| | |
|---|---|
| JENNIFER CARTWRIGHT, individually and as the personal representative of the heirs and Estate of Cameron Rutherford; and SCOTT RUTHERFORD, individually,<br><br>Plaintiffs,<br><br>v.<br><br>HOODOO LAND HOLDINGS, L.L.C., dba PRESTON NUTTER RANCH; PRESTON NUTTER RANGE CREEK HOLDINGS, LLC; HUNT CONSOLIDATED, INC.; WHIRLPOOL CORPORATION; and WHIRLPOOL CORPORATION SOUTH AMERICA,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER<br><br><br><br>Case No. 2:24-cv-00376-TS-JCB<br><br><br><br>District Judge Ted Stewart<br><br>Magistrate Judge Jared C. Bennett |

**INTRODUCTION**[1]

Plaintiffs Jennifer Cartwright and Scott Rutherford (collectively, "Plaintiffs") moved to compel Defendants Hoodoo Land Holdings, L.L.C. dba Preston Nutter Ranch; Preston Nutter Range Creek Holdings, LLC; and Hunt Consolidated, Inc. (collectively, "Hoodoo Defendants") to provide complete responses to Interrogatory No. 1 and Request for Production No. 1 in Plaintiffs' second set of discovery requests.[2] Hoodoo Defendants opposed Plaintiffs' motion as

---

[1] This case is referred to Magistrate Judge Jared C. Bennett under 28 U.S.C. § 636(b)(1)(A). ECF No. 11.

[2] ECF No. 79.

untimely and because the discovery requests sought information irrelevant to the claims and defenses involved in this case.[3] The court held a hearing on Plaintiffs' motion and took it under advisement.[4] After considering the parties' written and oral arguments, the court grants in part and denies in part Plaintiffs' motion.

## ANALYSIS

Resolving Plaintiffs' motion requires the court to consider two issues. First, whether Plaintiffs' motion to compel is timely. Second, if timely, whether it seeks to compel production of information relevant to the claims and defenses in this case. Each issue is addressed in order.

### I. Plaintiffs' Motion Is Timely Under DUCivR 37-1.

Plaintiffs timely filed their motion to compel under DUCivR 37-1(b)(2)(C)'s 45-day filing deadline. DUCivR 37-1(a)(2) requires a party who is dissatisfied with a discovery response to, "[a]t a minimum," provide "a prompt written communication" to the responding party that identifies the discovery deficiency and requests to meet and confer about the response. If the parties are unable to work out their concerns regarding the discovery response, then either party may file with the court a short form discovery motion "no later than 45 days after the prompt written communication in section 37-1(a)(2) was sent to opposing counsel."[5] DUCivR 37-1(b)(2)(C) warns that "[f]ailure to meet the deadline *may* result in automatic denial of the motion."[6] As the United States Supreme Court "has repeatedly observed, the word 'may' clearly

---

[3] ECF No. 80.

[4] ECF No. 85.

[5] DUCivR 37-1(b)(2)(C).

[6] *Id.* (emphasis added).

connotes discretion."[7] Indeed, this reading of the word "may" in DUCivR 37-1(b)(2)(C) is consistent with the "broad discretion" district courts possess to determine the timeliness of a motion to compel.[8]

Courts within this district have provided guideposts for exercising this discretion when determining the timeliness of a short form discovery motion. On the one hand, courts in this district have rejected short form motions as untimely where the movant has "stockpile[d] an ongoing list of problems" for months at a time only to raise the issues "at the eleventh hour" after, at, or near the fact discovery deadline.[9] On the other hand, where counsel are engaged in a lengthy, iterative meet-and-confer process that results in supplemental productions that attempt to resolve the dispute, courts in this district have found a motion to compel timely even when the motion is filed more than 45 days after the initial written communication.[10]

Reading the 45-day deadline in this fashion makes practical sense for both the parties and the court. Where the parties are making progress to resolve their discovery disputes on their own

---

[7] *Bouarfa v. Mayorkas*, 604 U.S. 6, 13 (2024) (citation modified).

[8] *King v. Cellco P'ship*, No. 2:20-cv-00775-JNP-JCB, 2023 WL 1993875, at *4 (D. Utah Feb. 14, 2023) (citing *Centennial Archaeology, Inc. v. AECOM, Inc.*, 688 F.3d 673, 682 (10th Cir. 2012)).

[9] *OL Private Counsel, LLC v. Olson*, No. 2:21CV000455, 2024 WL 3900103, at *3 (D. Utah Aug. 20, 2024) (finding that motion to compel that stockpiled discovery issues that ranged from 21 to four months old was untimely under DUCivR 37-1(b)(2)(C)); *see also, e.g.*, *Pingree v. Univ. of Utah*, No. 2:20-cv-00724-JNP-CMR, 2024 WL 2847944, at *3 (D. Utah. June 5, 2024) (finding motion untimely under DUCivR 37-1(b)(2)(C) where the plaintiff delayed filing motion until several months after close of fact discovery to raise discovery issues brought up in letter to opposing counsel).

[10] *See, e.g.*, *Thomas v. Weber State Univ.*, No. 1:20-CV-00054, 2022 WL 16963680, at *1 (D. Utah Nov. 16, 2022) (finding a motion timely even though it was filed after the 45-day deadline in DUCivR 37-1(b)(2)(C) where "record show[ed] the parties engaged in a meeting and conferral, supplemental production, and ongoing communication regarding the discovery disputes").

through meeting and conferring and supplemental exchanges of information, most counsel are naturally hesitant to burn any goodwill with opposing counsel earned during this iterative process by filing a discovery motion. No doubt that the opposing party would respond to the motion by saying that a motion was unnecessary because the parties have either resolved the issue or will do so quickly. Indeed, Hoodoo Defendants have taken that very position in previously filed short form motions in this case.[11]

Additionally, from the court's perspective, supplemental productions during this iterative process pose the practical problem of asking the court to decide a matter that is now entirely different than what the parties briefed. Once a responding party supplements its previous discovery responses, some of the originally briefed objections may either become moot or narrower. In other words, by the time the court and the parties get to oral argument, the situation is completely different than what the court is prepared to address based on the parties' written submissions. These circumstances essentially require a judicial restart to the originally filed motion, which means that all the previous argument and the court's preparation thereon is wasted.[12] This is poor judicial economy indeed.

---

[11] ECF Nos. 36, 38.

[12] A recent example of this phenomenon comes from another cases in which Hoodoo Defendants' law firm is participating. In *National Wood Products, Inc. v. Modern Mill, Inc.*, 2:25-cv-00407-TS-JCB, the plaintiffs issued interrogatories and document requests to defendants. *Id*. at ECF Nos. 26-29. The plaintiffs found the defendants' discovery responses insufficient and filed a motion to compel after meeting and conferring failed. However, defendants filed at least 2 additional rounds of supplemental responses, which required the court to continue the hearing on the short form motions so that the plaintiffs could sort out what issues remained to be decided. *Id*. at ECF Nos. 48-50.

To be sure, the better practice is for Plaintiffs to file a motion to extend time under DUCivR 37-1(b)(2)(C) while in discussions with Hoodoo Defendants, but Plaintiffs' failure is not necessarily fatal to bringing a motion given the long, iterative meet-and-confer process in this case, to which Hoodoo Defendants certainly contributed. The 45-day rule was meant to prevent parties from stockpiling discovery issues for months at a time only to spring them at the last minute to obtain an extension of fact discovery. The deadline was never intended to create a perverse incentive for a responding party to take its time to negotiate a resolution through the meet-and-confer process, then provide additional documents here and there, and, finally, hit the unsuspecting requesting party—who failed to read the local rules and seek an extension of time—with a "gotcha." Although the court is not suggesting that Hoodoo Defendants have acted improperly in seeking to resolve this dispute, the fact is that the parties have engaged in a lengthy meet-and-confer process with supplemental productions, and no scheduling order deadlines are in jeopardy. Consistent with this court's discretionary guideposts, strictly holding to the 45-day deadline is inconsistent with this court's obligations under Fed. R. Civ. P. 1. Therefore, Plaintiffs' motion is timely.

## II.   Plaintiffs' Request for Financial Information Is Relevant for Certain Hoodoo Defendants but Not Others and Should Be Limited to Existing Financial Status.

Plaintiffs' motion to compel responses to Interrogatory No. 1 and Request for Production No. 1 is granted in part and denied in part because seeking current financial information about certain Hoodoo Defendants that are legally capable of being subject to an award of punitive damages is relevant to Plaintiffs' claims and proportional to the needs of the case. Under Fed. R. Civ. P. 26(b)(1), a matter is discoverable if it is not privileged, relevant to the claims and defenses in the case, and is proportional to the needs of the case. The only issue under Rule

5

26(b)(1) that Hoodoo Defendants raise here is whether obtaining information about punitive damages (i.e., Hoodoo Defendants' financial information) is relevant to Plaintiffs' claims.

Generally, "[i]nformation of a defendant's net worth or financial condition is relevant . . . because it can be considered in determining punitive damages."[13] Although relevant, courts are divided as to the procedural point at which financial information is discoverable. For example, "a majority of federal courts permit pretrial discovery of financial information of the defendant without requiring plaintiff to establish a *prima facie* case on the issue of punitive damages."[14] But, as the previous sentence implies, some federal courts have not allowed pretrial discovery of financial information when a punitive damages claim has been asserted unless and until the plaintiff established a *prima facie* case for punitive damages.[15] In fact, Utah law imposes such a rule by statute,[16] but that statute is an evidentiary rule and not a limitation on discovery.[17] To complicate matters further, other federal courts agree that even though the plaintiff need not show a *prima facie* case of entitlement to punitive damages, the plaintiff must show that the

---

[13] *Mid Continent Cabinetry, Inc. v. George Koch Sons, Inc.*, 130 F.R.D. 149, 151 (D. Kan. 1990); *see also* Utah Code Ann. § 78B-8-201(2) (stating that evidence of a "party's wealth or financial condition" is relevant to punitive damages).

[14] *Mid Continent Cabinetry, Inc.*, 130 F.R.D. at 151; *see generally* Pretrial Discovery of Defendant's Financial Worth on Issue of Damages, 27 A.L.R.3d 1375, 1377 (1969).

[15] *Mid Continent Cabinetry, Inc.*, 130 F.R.D. at 151 (providing a list of cases).

[16] Utah Code Ann. § 78B-8-201(2).

[17] *Vivint, Inc. v. Northstar Alarm Servs., LLC*, No. 2:16-cv-00106-JNP-EJF, 2018 WL 11467218, at *2 (D. Utah Apr. 23, 2018); *Free Conf. Call Holdings, Inc. v. Powerhouse Commc'ns, LLC*, No. 2:07-cv-893-CW, 2009 WL 2916749, at *2 (D. Utah Sept. 8, 2009).

claim for punitive damages is "not spurious."[18] But many of the federal courts that require either a *prima facie* or nonspurious showing of punitive damages *before* allowing discovery thereon look to the allegations in the complaint to make that *prima facie* determination.[19]

As the court considers these varied approaches to when discovery of financial information is appropriate, the court is persuaded to follow the majority rule for four reasons. First, Rule 26(b)(1) provides three standards for discoverability: (1) not privileged; (2) relevant to the claims and defenses; and (3) proportional to the needs of the case. That rule does not create special standards for specific types or topics of discovery,[20] and this court is loath to create special standards by judicial fiat that were not adopted by the national rules committee after careful and thoughtful consideration.

Second, and related to the first point, requiring a *prima facie* showing for punitive damages before allowing discovery is backwards. The point of discovery is to obtain information

---

[18] *Ward v. Neisbo*, No. 4:22-cv-00054-DN-PK, 2023 WL 3391145, at *4 & n.20 (D. Utah May 11, 2023); *see also, e.g.*, *Krenning v. Hunter Health Clinic, Inc.*, 166 F.R.D. 33, 34 (D. Kan. 1996).

[19] *See, e.g.*, *Ward*, 2023 WL 3391145, at *4 & n.20 (D. Utah May 11, 2023) (looking to allegations of the complaint to determine whether punitive damages request is spurious); *Pipkin v. Acumen*, No. 1:18-cv-00113-HCN-PMW, 2020 WL 2043534, at *2 (D. Utah Apr. 28, 2020) (looking to allegations in operative complaint to determine *prima facie* case of punitive damages); *Krenning*, 166 F.R.D. at 34 (looking to allegations of the complaint to determine whether punitive damages request is spurious); *Chenoweth v. Schaaf*, 98 F.R.D. 587, 589-90 (W.D. Pa. 1983) (stating that discovery for punitive damages barred absent allegations in complaint that demonstrate a "real possibility" that punitive damages will be at issue); *but see, e.g.*, *John Does I-VI v. Yogi*, 110 F.R.D. 629, 633 (D.D.C. 1986) (stating, without analysis, that discovery of financial status should not be turned over until necessary to prove up punitive damages); *Rupe v. Fourman*, 532 F. Supp. 344, 350-51 (S.D. Ohio 1981) (precluding discovery of financial information for punitive damages purposes until liability proven in trial bifurcated between liability and damages).

[20] *King*, 543 F. Supp. 3d at 1222.

to prove or disprove a claim or defense; establishing the merits of a claim *before* being able to seek discovery is not the system.

Third, requiring a *prima facie* or nonspurious showing of punitive damages in the complaint ignores the law. The law does not require a plaintiff to plead punitive damages in a complaint, much less establish them by factual allegations that meet the plausibility standard in *Bell Atlantic Corp. v. Twombly*[21] or *Aschroft v. Iqbal*.[22] For example, in *Dowdy v. Coleman Co., Inc.*, District Judge Dale A. Kimball rejected the argument that a plaintiff had to plead punitive damages in a complaint and that a punitive damage claim had to be "plausible" under federal pleading standards.[23] Imposing a complaint-based *prima facie* or nonspurious standard, as other courts have, would ignore the legal reality regarding pleading and punitive damages. This court will not do that especially where the Federal Rules of Civil Procedure are silent on such matters.

Finally, "knowledge of defendant's net worth will be of value to both sides in making a realistic appraisal of the case, and may lead to settlement and avoid protracted litigation."[24] Knowing current financial information for the proper Hoodoo Defendants will help the parties and the court understand how much this case is worth—which is a factor of proportionality under Rule 26(b)(1)—and may help reach a settlement.

Although pretrial discovery on punitive damages is relevant as a general matter, it may not be relevant to specific defendants who are not susceptible to punitive damages. For example,

---

[21] 550 U.S. 544 (2006).

[22] 556 U.S. 662 (2008).

[23] No. 1:11CV45DAK, 2011 WL 6151432, at *4 (D. Utah Dec. 12, 2011) (citing *Behrens v. Raleigh Hills Hosp., Inc.*, 675 P.2d 1179, 1182 (Utah 1983)).

[24] *Mid Continent Cabinetry, Inc.*, 130 F.R.D. at 152.

suppose a complaint pleads a simple negligence claim against hypothetical parties A and B but later pleads another claim for which punitive damages are possible for only party B. Because "[s]imple negligence will never suffice as a basis upon which [punitive] damages may be awarded,"[25] seeking discovery for punitive damages from party A is irrelevant because party A's financial information has nothing to do with any claim against it.

This case presents a real issue as to which Hoodoo Defendants are legally susceptible to punitive damages. For example, only a "possessor" of property can be subject to punitive damages under Plaintiffs' premises liability claim.[26] After discussion with the court on this matter, Plaintiffs' counsel at oral argument agreed to limit Interrogatory No. 1 and Request for Production No. 1 to two Hoodoo Defendants: Hoodoo Land Holdings, L.L.C. dba Preston Nutter Ranch and Hunt Consolidated, Inc. Later in the hearing, Hoodoo Defendants read into the record their answer to one of Plaintiffs' Requests for Admission in which Hoodoo Defendants admit that Hoodoo Land Holdings, L.L.C. dba Preston Nutter Ranch is the "possessor" of the cabin in which the decedent passed away. Thus, Plaintiffs and Hoodoo Defendants agree that Hoodoo Land Holdings, L.L.C. dba Preston Nutter Ranch is a party that may be subjected to punitive damages. Because financial information for purposes of punitive damages is relevant at this stage in discovery—as discussed above—and because the parties agree that Hoodoo Land Holdings, L.L.C. dba Preston Nutter Ranch could be subjected to punitive damages *if* Plaintiffs are able to

---

[25] *Behrens*, 675 P.2d at 1186.

[26] *See, e.g.*, *Peragallo v. W&T Holdings LLC*, 572 P.3d 1131, 1136 (Utah Ct. App. 2025) ("In a premises liability case, the critical inquiry is not identifying who owns the land but determining who qualifies as the possessor of the property.").

prove them at trial, that entity must respond to Plaintiffs' Interrogatory and Request for Production No. 1 as limited below.

However, the parties dispute whether Hunt Consolidated, Inc. is subject to a claim that would allow Plaintiffs to obtain punitive damages, which calls into question the relevance of Hunt Consolidated, Inc.'s financial information. Plaintiffs contended at oral argument that Hunt Consolidated, Inc.'s employees, who also worked at the site where the decedent passed away, could have been negligent to the point of opening the door to a punitive damages award. The Utah Supreme Court recognizes that an employer can be liable for punitive damages under certain conditions consistent with Restatement (Second) of Torts, § 909(b) and (e).[27] Given that punitive damages may be awarded against an employer for the acts of even low-level employees, Hunt Consolidated, Inc. also must respond to Plaintiffs' Interrogatory and Request for Production No. 1 as limited below.

Under Rule 26(b)(2), the court must limit the scope of Plaintiffs' Interrogatory and Request for Production No. 1 because they seek information outside the scope of Rule 26(b)(1). "[O]nly *current* financial information is relevant to punitive damages claims."[28] However, Plaintiffs' Interrogatory and Request for Production No. 1 seek information "from 2022 to the present."[29] That is far beyond "current financial information."[30] Thus, Hoodoo Land Holdings, L.L.C. dba Preston Nutter Ranch and Hunt Consolidated, Inc. need produce only the financial

---

[27] *Hodges v. Gibson Prods. Co.*, 811 P.2d 151, 163 (Utah 1991).

[28] *Vivint, Inc.*, 2018 WL 11467218, at *3 (emphasis added) (citing several cases).

[29] ECF No. 79-1 at 6-7 of 9.

[30] *Vivint, Inc.*, 2018 WL 11467218, at *3.

information each entity currently possesses for the one-year period prior to the date of production.[31] In doing so, both Hoodoo Land Holdings, L.L.C. dba Preston Nutter Ranch and Hunt Consolidated, Inc. may designate these materials as either Confidential or Attorneys' Eyes Only under the court's standard protective order in DUCivR 26-2.[32] This should protect that information from disclosure in this case and prevents it from being used in any other case.

## ORDER

For the reasons stated above, the court HEREBY ORDERS:

1. Plaintiffs' motion to compel[33] is GRANTED IN PART and DENIED IN PART.

2. Within 14 days after the date of this Memorandum Decision and Order, Hoodoo Land Holdings, L.L.C. dba Preston Nutter Ranch and Hunt Consolidated, Inc. must provide responses to Plaintiffs' Interrogatory No. 1 and Request for Production No. 1 as limited above.

3. The court declines to award reasonable expenses to either Plaintiffs or Hoodoo Defendants under Fed. R. Civ. P. 37(a)(5)(C).

---

[31] The court recognizes the variation between how courts interpret "current financial information." *Compare Pipkin*, 2020 WL 2043534, at *2 (narrowing scope of current financial information to most recent two or three years), *with Accountable Health Sols., LLC v. Wellness Corp. Sols., LLC*, No. 16CV2494, 2017 WL 3229071, at *5 (D. Kan. July 31, 2017) (limiting the scope of current financial information to the one-year period prior to the date defendant produces financial information). This one-year period should not unduly hamper Plaintiffs' understanding of the relevant Hoodoo Defendants' current financial situation because of Rule 26(e)(1)'s duty to supplement discovery responses, which should be done at least annually until this case is resolved by pretrial motion or at trial.

[32] *Pipkin*, 2020 WL 2043534, at *2 (allowing discovery of current financial information for punitive damages under protective order); *Free Conf. Call Holdings, Inc.*, 2009 WL 2916749, at *2 (same).

[33] ECF No. 79.

11

IT IS SO ORDERED.

DATED this 7th day of January 2026.

BY THE COURT:

_____
JARED C. BENNETT
United States Magistrate Judge