IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| JENNIFER CARTWRIGHT, individually and as the personal representative of the heirs and Estate of Cameron Rutherford; and SCOTT RUTHERFORD, individually,<br><br>Plaintiffs,<br>v.<br><br>HOODOO LAND HOLDINGS, LLC *dba* PRESTON NUTTER RANCH et al.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS<br><br>Case No. 2:24-cv-00376-TS-JCB<br><br>District Judge Ted Stewart<br>Magistrate Judge Jared C. Bennett |

This matter comes before the Court on Defendants Hunt Consolidated, Inc.'s and Preston Nutter Range Creek Holdings, LLC's Motion to Dismiss,[1] Defendant Hunt Oil Company's Motion to Dismiss,[2] and Defendants Hoodoo Land Holdings, LLC, d/b/a Preston Nutter Ranch, Preston Nutter Range Creek Holdings, LLC, and Hunt Consolidated Inc's Motion to Dismiss Plaintiff Scott Rutherford Pursuant to Federal Rule of Civil Procedure 25(a)(1).[3] For the reasons discussed below, the Court will grant each of the Motions.

## I. BACKGROUND

Plaintiffs sue Defendants for claims related to the death of Cameron Rutherford at a cabin on the Preston Nutter Ranch (the "Ranch") in Carbon County, Utah. Plaintiffs are Mr. Rutherford's parents. Defendants are Hoodoo Land Holdings, LLC d/b/a Preston Nutter Ranch

---

[1] Docket No. 124.

[2] Docket No. 126.

[3] Docket No. 182.

("Hoodoo"), Preston Nutter Range Creek Holdings, LLC ("Preston"), Hunt Oil Company ("Hunt Oil"), and Hunt Consolidated, which the Complaint refers to collectively throughout as "Hunt." [4] Plaintiffs also sue Whirlpool Corporation and Whirlpool Corporation South America, which the Complaint refers to collectively as "Whirlpool."[5]

The Complaint alleges that Hunt owned, managed, operated, and/or maintained the Ranch.[6] Mr. Rutherford was not a Hunt employee but, he worked at the Ranch at the time of his death. While working there, Mr. Rutherford stayed in a cabin on the Ranch, where he was found deceased on July 25, 2023. An autopsy revealed that Mr. Rutherford died of carbon monoxide poisoning. Plaintiffs allege that the refrigerator at the cabin was emitting excessive amounts of carbon monoxide, which caused his death.

Plaintiffs assert six causes of action in the Second Amended Complaint: (1) Negligence against "Hunt"; (2) Premises Liability against "Hunt"; (3) Vicarious Liability against "Hunt"; (4) Wrongful Death against all Defendants; (5) Strict Products Liability against Whirlpool; and (6) Negligence against Whirlpool.

Defendants Hunt Consolidated and Preston move to dismiss the claims against them under Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6). Defendant Hunt Oil moves to dismiss the claims against it pursuant to Rules 12(b)(2), 8(a)(2), and 12(b)(6). The Court will address both Motions in turn below before turning to Defendants' unopposed Motion to Dismiss Plaintiff Scott Rutherford.

---

[4] Docket No. 113 ¶ 3.

[5] *Id.* ¶ 4.

[6] *Id.* ¶ 8.

## II. DISCUSSION

### A. Hunt Consolidated's and Preston's Motion

#### 1. Rule 8(a)(2)

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." The purpose of Rule 8 is to "give the defendant fair notice of what the claim is and the grounds upon which it rests."[7] "When a complaint includes multiple claims against multiple defendants, it must put each defendant on notice of what claims are asserted against them and the facts that support these claims."[8] "[A] failure to satisfy Rule 8 can supply a basis for dismissal."[9]

Defendants argue that the Complaint is a shotgun pleading in that it asserts "multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against."[10] The Court agrees that the Complaint runs afoul of Rule 8 by grouping the "Hunt" Defendants together and will grant the Motion. However, the Court will allow Plaintiffs leave to file an Amended Complaint within fourteen (14) days of this Order to remedy the issue.[11]

---

[7] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks and citation omitted).

[8] *Utah Physicians for a Healthy Env't Inc. v. Dieselsellerz.com, LLC*, No. 2:17-cv-00032-RJS-DBP, 2017 WL 11477130, at *1 (D. Utah June 20, 2017).

[9] *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe Cnty. Just. Ctr.*, 492 F.3d 1158, 1161 (10th Cir. 2007).

[10] Docket No. 124, at 6 (quoting *Gibson v. City of Portland*, 165 F.4th 1265, 1288 (9th Cir. 2026)).

[11] *See McCracken-Phillips v. No Defendants Named*, No. 08-CV-02408-MSK-MJW, 2008 WL 5381965, at *1 (D. Colo. Dec. 24, 2008) ("When a complaint does not meet all of the requirements of Fed. R. Civ. P. 8(a), the court may elect to allow a plaintiff the opportunity to file an amended complaint.").

Defendants argue that the Court should not allow Plaintiffs the opportunity to amend their Complaint because they have already been permitted to amend their Complaint twice. Defendants cite to a Ninth Circuit case in which the court denied the plaintiffs leave to amend their complaint after it had given them "several chances to amend, with detailed instruction as to what they needed to do to fix the problems with their complaint."[12] The Court does not find this persuasive, although Plaintiffs have filed for leave to amend twice before, the Court has not previously provided instruction as to the issues with the Complaint. As such, the Court will allow Plaintiffs to amend their Complaint both to comply with Rule 8 and Rule 12(b)(6) as discussed below.

2. Rule 12(b)(6)

When evaluating a complaint under Federal Rule of Civil Procedure 12(b)(6), the court accepts all well-pleaded factual allegations, as distinguished from conclusory allegations, as true and views them in the light most favorable to the non-moving party.[13] The plaintiff must provide "enough facts to state a claim to relief that is plausible on its face,"[14] which requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."[15] "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"[16]

---

[12] *Destfino v. Reiswig*, 630 F.3d 952, 959 (9th Cir. 2011).

[13] *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997).

[14] *Twombly*, 550 U.S. at 570.

[15] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[16] *Id.* (quoting *Twombly*, 550 U.S. at 555, 557).

Defendants argue that the Complaint fails because neither party owned or possessed the Ranch at the time of the incident and did not employ any Ranch personnel at the time of the incident. In Response, Plaintiffs attach over 1,400 pages of exhibits, and cite to the exhibits to support its opposition. Plaintiffs ask the Court to convert the Motion to one for summary judgment because Defendants' arguments present matters outside the pleadings in arguing they are not the possessor of land or employer of Ranch employees.

"[A] court may consider exhibits attached to a complaint when ruling on a motion to dismiss under Rule 12(b)(6), but consideration of material attached to a motion to dismiss requires the court to convert the motion into one for summary judgment and afford the parties an opportunity to present relevant evidence."[17] Additionally, "the district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[18] The exhibits included in Plaintiffs' Response were neither attached to the operative Complaint or referred to therein.

The Court declines to convert Defendants' Rule 12(b)(6) Motion to one for summary judgment and as such, will not consider Plaintiffs' exhibits and the arguments flowing therefrom in its ruling pursuant to Rule 12(b)(6).

To state a claim for negligence, a plaintiff must plead the following: (1) the defendant owed plaintiff a duty, (2) the defendant breached that duty, (3) the breach of the duty was the proximate cause of plaintiff's injury, and (4) the plaintiff in fact suffered injuries or damages.[19]

[17] *Firehole River Cap., LLC v. Superva Healthcare Grp., Inc.*, No. 2:21-cv-00153-DBB, 2021 WL 4291087, at *2 (D. Utah Sept. 21, 2021).

[18] *Jacobsen v. Deseret Book, Co.*, 287 F.3d 936, 941 (10th Cir. 2002).

[19] *Gonzalez v. Russell Sorenson Constr.*, 2012 UT App 154, ¶ 20, 279 P.3d 422.

Defendants argue that the negligence and premises liability claims fail because they did not own or possess the Ranch at the time of the incident. However, the Court's function under Rule 12(b)(6) is "to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[20]

The Complaint pleads that Hunt Defendants owed Mr. Rutherford a duty of reasonable care. Utah law recognizes "the duty of reasonable care that all business owners owe to their invitees."[21] While the Complaint pleads that Mr. Rutherford was working at the Ranch, it does not otherwise plead how/if he was a business invitee of Hunt Consolidated and Preston specifically, as is necessary, to support that they owed him a duty. The Complaint also fails to plead what these specific Defendants did to breach this duty.

Turning to premises liability,

> [i]n Utah, a possessor of land may be subject to liability for injuries to invitees caused by a condition on the land if the possessor (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and (c) fails to exercise reasonable care to protect them against the danger.[22]

The Complaint merely recites the elements of a premises liability claim with no factual allegations supporting that either Defendant knew or by reasonable exercise of care would discover the allegedly dangerous condition of carbon monoxide. Nor does the Complaint allege specific facts supporting the other elements of the claim. Accordingly, the Court will dismiss the premises liability claim.

---

[20] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[21] *Est. of Schofield v. Starbucks Corp.*, 2025 UT App 29, ¶ 18, 566 P.3d 777.

[22] *Downham v. Arbuckle*, 2021 UT App 121, ¶ 11, 502 P.3d 312 (internal quotation marks and citations omitted).

Next, "[u]nder the common law agency doctrine of respondeat superior, 'an employee can be held vicariously liable for the torts of her employees.'"[23] "Employers are 'liable for an employee's actions that occur within the scope of employment when performing work assigned by the employer or engaging in a course of conduct subject to the employer's control.'"[24] Employee's acts are within the scope of employment if "(1) the employee's conduct is of the general kind the employee is employed to perform and (2) the employee's acts were motivated, at least in part, by the purpose of serving the employer's interest."[25]

The Complaint is devoid of facts alleging that there is an employee/employer relationship between any of the Defendants supporting a vicarious liability theory or alleging any acts by employees that should be imputed to an employer. Accordingly, the Court will dismiss this claim as to Hunt Consolidated and Preston.

The Complaint also alleges a claim for wrongful death against all Defendants. Utah's wrongful death statute provides that "when the death of a person is caused by the wrongful act or neglect of another, his heirs . . . may maintain an action for damages against the person causing the death."[26] Utah courts have held that "while wrongful death is a separate claim that comes into existence upon the death of the injured person, it is derivative in the sense that it will not lie without a viable underlying personal injury claim."[27]

---

[23] *Sampson v. HB Boys, LC*, 2024 UT App 56, ¶ 24, 548 P.3d 538 (quoting *Burton v. Chen*, 2023 UT 14, ¶ 15, 532 P.3d 1005.

[24] *Id.* (quoting *Burton*, 2023 UT 14, ¶ 15).

[25] *Aguila v. Planned Parenthood of Utah*, 2023 UT App 49, ¶ 21, 530 P.3d 959 (internal quotation marks and citation omitted).

[26] *Feldman v. Salt Lake City Corp.*, 2021 UT 4, ¶ 18, 484 P.3d 1134 (quoting Utah Code Ann. § 78B-3-106(1)).

[27] *Id.* ¶ 20 (internal quotation marks and citations omitted).

The Complaint pleads that Defendants' wrongful acts and omissions caused Mr. Rutherford's death. Defendants do not address this claim. However, based on the derivative nature of the claim, the Court must also dismiss this claim because the Court has dismissed the underlying personal injury claims.

Although the Court finds that the Complaint fails to state a claim as to the Hunt Consolidated and Preston Defendants, the Court recognizes, as it did above, that Plaintiffs could state plausible claims and will therefore provide Plaintiffs leave to amend the Complaint if they wish to do so.

B. Hunt Oil's Motion

Hunt Oil filed its Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(2), 12(b)(6) and 8(a)(2).

Under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of showing that the Court has personal jurisdiction over each defendant.[28] Where, as here, there has been no evidentiary hearing, the plaintiff need only make a *prima facie* showing of personal jurisdiction.[29] In considering a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), a court may consider affidavits and declarations presented by the parties.[30] If the defendant challenges the jurisdictional allegations, the plaintiff must support those allegations by competent proof of the supporting facts.[31] In evaluating the plaintiff's showing, "[t]he allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's

[28] *Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (citing *Dudnikov v. Chalk Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1069–70 (10th Cir. 2008)).

[29] *Id.*; *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995) (citation omitted).

[30] *Wenz*, 55 F.3d at 1505.

[31] *Pytlik v. Pro. Res., Ltd.*, 887 F.2d 1371, 1376 (10th Cir. 1989) (citation omitted).

affidavits. If the parties present conflicting affidavits, all factual disputes must be resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party."[32]

In determining whether the court has personal jurisdiction over a defendant, the court must determine (1) whether Utah law authorizes jurisdiction and (2) whether the exercise of jurisdiction comports with due process.[33] Utah's long-arm statute authorizes jurisdiction over non-resident defendants "to the fullest extent permitted by the due process clause of the Fourteenth Amendment to the United States Constitution."[34] Therefore, the personal jurisdiction analysis collapses into one inquiry: whether exercising jurisdiction comports with due process.[35]

"[T]o exercise jurisdiction in harmony with due process, defendants must have 'minimum contracts' with the forum state, such that having to defend a lawsuit there would not 'offend traditional notices of fair play and substantial justice.'"[36] Such "minimum contacts" may give rise to either general or specific personal jurisdiction.[37] "General jurisdiction, as its name implies, extends to any and all claims brought against a defendant."[38] "A state court may exercise general jurisdiction only when a defendant is 'essentially at home' in the State."[39]

---

[32] *Wenz*, 55 F.3d at 1505 (internal quotation marks and citations omitted).

[33] *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1100 (10th Cir. 2009).

[34] Utah Code Ann. § 78B-3-201(3).

[35] *ClearOne Comm'cn, Inc. v. Bowers*, 643 F.3d 735, 763 (10th Cir. 2011).

[36] *Dudnikov*, 514 F.3d at 1070 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[37] *Monge v. RG Petro-Mach. (Grp.) Co.*, 701 F.3d 598, 613 (10th Cir. 2012).

[38] *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021) (internal quotation marks and citation omitted).

[39] *Id.*

Plaintiffs do not argue that general jurisdiction exists here and as such the Court will not address it.[40]

Specific jurisdiction, by contrast, applies when "in exchange for 'benefitting' from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts."[41] The defendant must have taken some action "by which it purposefully avails itself of the privilege of conducting activities within the forum State" and the plaintiff's claims "must arise out of or relate to the defendant's contacts with the forum."[42]

Plaintiffs argue that Hunt Oil's actions in managing, operating, and maintaining the Ranch as well as employing the Ranch employees establishes that the company purposefully availed itself of the benefits of conducting activities within Utah and that the incident arose out of those activities.

"The purposeful direction requirement 'ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, . . . or of the unilateral activity of another party or third person.'"[43] "Mere foreseeability of causing an injury in another state" is not enough, but "where the defendant deliberately has engaged in significant activities within a State, . . . he manifestly has availed himself of the privilege of conducting business there."[44]

[40] Docket No. 134, at 14.

[41] *Dudnikov*, 514 F.3d at 1078 (citing *Trujillo v. Williams*, 465 F.3d 1210, 1218 n.7 (10th Cir. 2006)).

[42] *Ford Motor Co.*, 592 U.S. at 352.

[43] *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 904–905 (10th Cir. 2017) (quoting *Burger King v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

[44] *Id.* at 905 (internal quotation marks and citation omitted).

Courts use three frameworks to determine whether a defendant's activities satisfy purposeful direction: (1) continuing relationships with forum state residents, (2) deliberate exploitation of the forum state market; and (3) harmful effects in the forum state.[45] The parties do not address Hunt Oil's activities here under any of them. Nonetheless, the Court will apply them below.

The first framework looks to Defendant's "continuing relationships and obligations with citizens of the forum state."[46] The Supreme Court "has upheld the assertion of jurisdiction over defendants who have purposefully reached out beyond their State and into another by, for example, entering a contractual relationship that envisioned continuing and wide-reaching contacts in the forum State."[47]

To determine whether Hunt Oil purposefully directed its conduct at Utah, the Court looks to the allegations in the Complaint and the declarations and exhibits submitted by Hunt Oil and Plaintiffs. The Complaint is devoid of any allegations addressing Hunt Oil's specific contacts with Utah, as such, the Court will turn to allegations in the attached exhibits.

Plaintiffs attach over 1,400 pages of exhibits to their Response that they argue establish that Hunt Oil purposefully availed itself of doing business in Utah. Plaintiffs assert that two Ranch employees, Jake Martin and the Ranch Manager, Blair Eastman, testified that they were employed by Hunt Oil.[48] The deposition testimony of both employees is not entirely clear or consistent, because Mr. Martin also testified at the time of the incident, he was employed by

---

45 *See id.* 877 F.3d 895, 905 (citing *Burger King*, 471 U.S. at 472–73.

46 *Id.* (quoting *Burger King*, 471 U.S. at 473).

47 *Id.* (internal quotation marks and citations omitted).

48 Docket No. 134, at 11.

Gray Bull Investments which was a subsidiary of Hunt Consolidated.[49] And, Mr. Eastman testified that at the time of the incident he was employed by Hunt Consolidated[50] and Hoodoo Land Holdings.[51]

Mr. Martin testified that when asked who he worked for he would say, "Preston Nutter Ranch or Hunt Oil,"[52] and that Hunt Oil fell under the umbrella of Hunt Consolidated that "covers Hunt Oil, Hunt Energy, Hunt Realty, which I think Hoodoo is part of Hunt Realty."[53] When the following was asked about other Ranch employees: "[a]nd as you understood it, were they employees of Hunt Consolidated?" Mr. Martin responded, "I think we were all paid the same way and shuffled around . . . I think it was the same story where we're all employees of Hunt Oil but we're shuffled around to--".[54] Mr. Eastman testified "I worked for Hunt Oil Company. I worked for Hoodoo Land Holdings, Hunt Consolidated, Ag Hoc."[55]

Plaintiffs also argue that employment files show that Hunt Oil was the employer of Ranch personnel, and was paying for employee tuition, providing employees with benefits, such as company vehicles, and workers compensation; conducting drug and background checks on employees; and deducting wages.[56] Review of these employment documents shows that the applications documents marked "Hunt Oil" are from 2001, 2002, and 2004. The employee tuition documents are from 2017, 2018, 2019. The letter referencing a Hunt Oil company vehicle is

---

[49] Docket No. 134-1, at 8:20–9:1.

[50] Docket No. 134-2, at 6:18–22.

[51] *Id.* at 10:13–25.

[52] Docket No. 134-1, at 11:14–18.

[53] *Id.* at 11:23–25.

[54] *Id.* 13:8–16.

[55] Docket No. 134-2, at 7:16–18.

[56] Docket No. 134, at 11.

from 2001. The workers compensation document is from 2004. Most of the drug and background checks are from 2002 and 2004, with one from 2021 that indicates it was sent to "Hunt Oil." The deducting wages document is from 2004.

Plaintiffs argue that the evidence shows that Hunt Oil paid for maintenance and repair on the Ranch.[57] The supporting documents are invoices for work done at the Ranch dated 2010, 2011, 2012, 2018, 2019, and 2020. There is one dated 2022.[58] None of these documents are from Hunt Oil, but are contractor invoices with the name "Hunt Oil" written in as the client name. These documents do not show that Hunt Oil was paying for repair work, but rather that the name appeared on invoices for the Ranch. The latest invoice from 2022, is stamped "Approval" "Preston Nutter Ranch" "3/5/23."[59]

Finally, Plaintiffs assert that Hunt Oil used the Ranch as a retreat for their executives and business guests.[60] Another employee of the Ranch, Kresha Eastman, testified that private hunters come to the Ranch, usually "someone that might be related to the [H]unt companies."[61]

These exhibits do not show a continuous relationship between Hunt Oil and Utah that envisioned continuing and wide-ranging contacts in the State. The majority of the documents offered in support of personal jurisdiction are from the early 2000s and involve others putting the name "Hunt Oil" down with no directed action by Hunt Oil. The Ranch employee testimony regarding their employer is unclear and not supported by the other exhibits put forth by

---

[57] *Id.*

[58] Docket No. 139-1, at 9 (SEALED).

[59] *Id.* (SEALED).

[60] Docket No. 134, at 11–12.

[61] Docket No. 134-8, at 14:10–11.

Plaintiffs, specifically the employment records. As such, Plaintiffs fail to provide prima facie evidence of personal jurisdiction under the continuous relationship framework.

Hunt Oil attached to its Motion the Declaration of Payton Mino, Vice President and Chief Accounting Officer for Hunt Consolidated, Inc.[62] The declaration states that Hunt Oil does not have employees in Utah and did not employ any Ranch employees in 2022 or 2023 or otherwise compensate or pay any Ranch employees during that time.[63] He states that Hunt Oil did not own, operate, or manage Hoodoo in 2022 or 2023.[64] He states that Hunt Oil has not paid any of the vendor or vendor invoices who provided services to the Ranch.[65]

Under the second framework, a "continuous and deliberate exploitation of the forum state market may also satisfy the purposeful direction requirement."[66] For example, sales in the forum may suffice to show the defendant "deliberately exploited" the forum State.[67] Plaintiffs fail to provide prima facie evidence of personal jurisdiction under this framework. The allegations detailed above do not show that Hunt Oil deliberately exploited Utah.

Finally, purposeful direction may also be established under the harmful effects test. Under this test, the Court considers whether defendant engaged in "(a) an intentional action . . . , that was (b) expressly aimed at the forum state . . . , with (c) knowledge that the brunt of the

---

[62] Docket No. 126-1.

[63] *Id.* ¶¶ 7, 21.

[64] *Id.* ¶¶ 18, 20.

[65] *Id.* ¶ 22.

[66] *Old Republic Ins. Co.*, 877 F.3d at 905–06 (internal quotation marks and citation omitted).

[67] *Id.* at 906.

injury would be felt in the forum state."[68] The Complaint does not plead that Hunt Oil engaged in intentional conduct that would satisfy this test.

Plaintiffs argue that even if the Court finds that it does not have personal jurisdiction over Hunt Oil, the Court has discretion to order jurisdictional discovery because the information currently available "creates at least enough of a question" of Hunt Oil Company's contacts with the forum state.[69] Pursuant to DUCivR 7-1(a)(3), "a party may not make a motion . . . in a response or reply. Any motion must be separately filed." Plaintiffs did not file a separate motion for jurisdictional discovery and as such, the Court will not consider the request. Accordingly, the Court will grant the Motion and dismiss Hunt Oil for lack of personal jurisdiction.

C. Rule 25(a)(1)

Defendants move to dismiss Plaintiff Scott Rutherford's claims pursuant to Federal Rule of Civil Procedure 25(a)(1). Rule 25(a)(1) provides

> [i]f a party dies and the claim is not extinguished; the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

Here, Defendants filed a Notice of Suggestion of Death of Plaintiff Scott Rutherford on May 12, 2026.[70] The Court must dismiss Scott Rutherford's claims in this matter as no substitution of the proper party has been filed and more than 90 days has elapsed since the notice was filed. Furthermore, Plaintiff Jennifer Cartwright responded that she does not oppose the Motion.

---

[68] *Id.* at 907.

[69] Docket No. 134, at 15.

[70] Docket No. 165.

III. CONCLUSION

It is therefore

ORDERED that Defendants Hunt Consolidated and Preston's Motion to Dismiss (Docket No. 124) is GRANTED; it is further

ORDERED that Defendant Hunt Oil's Motion to Dismiss (Docket No. 126) is GRANTED; it is further

ORDERED that Defendants Hoodoo, Preston, and Hunt Consolidated's Motion to Dismiss Plaintiff Scott Rutherford's Claims (Docket No. 182) is GRANTED; it is further

ORDERED that Plaintiffs shall have fourteen (14) days from the date of this Order to file an Amended Complaint as discussed herein.

DATED September 24, 2026.

BY THE COURT:

TED STEWART
United States District Judge